Newcomb's Ex'or v. Newcomb.

CASE 22—WILL CONTEST—OCTOBER 30.

## Newcomb's Ex'or v. Newcomb.

APPEAL FROM HENDERSON CIRCUIT COURT.

1. THE OPINION OF A NON-PROFESSIONAL WITNESS AS TO THE SANITY OR INSANITY OF A TESTATOR is competent, if the witness has had an opportunity by association and observation to form such an opinion; and its admissibility is not dependant on whether or not the witness is able to detail specific facts of themselves showing sanity or insanity.

2. IN A WILL CONTEST IT WAS NOT MISLEADING TO INSTRUCT THE JURY that, in order to find for the will, they must believe the maker of the instrument had the capacity to know his wife and children, and his estate, "and to dispose of the same in a rational manner according to a fixed purpose on his part." And objection to such an instruction is not available whether made by the propounders or contestants.

3. UNREASONABLE AND UNNATURAL PROVISIONS IN A WILL may be shown as elements of testamentary incapacity.

4. VERDICT SUSTAINED BY EVIDENCE.—Although the verdict of the jury rejecting the will is against the weight of the evidence, yet as it is not so palpably so as to indicate passion or prejudice, the court will not set it aside on that ground.

5. THE FACT THAT THE CROWD APPLAUDED THE EFFORTS OF ONE OF THE COUNSEL FOR APPELLEE when addressing the jury does not afford ground for reversal, no motion being made to discharge the jury or objection in any form taken to the incident.

YEAMAN & LOCKETT FOR APPELLANT.

1. The opinion of a non-expert as to the sanity or insanity of a testator is incompetent, unless accompanied by a statement of the facts

Newcomb's Ex'or v. Newcomb.

upon which that opinion is based. (McDaniels' will, 2 J. J. M., 331; Hunt's Heirs v. Hunt, 3 B. M., 577; Sherley v. Taylor's Heirs, 5 B. M., 102–3.)

2. An instruction to the jury that, in order to make a will, the testator should have the capacity to dispose of his estate " in a rational manner" was misleading and prejudicial to appellant. The court erred in refusing an instruction explanatory of the words, "in a rational manner." (Zimlich v. Zimlich, 12 Ky. Law Rep., 591.)

The doctrine of the Tudor case does not apply, as in that case the *contestant* was objecting. (Tudor v. Tudor, 17 B. M., 391.)

3. The court erred in refusing to give a peremptory instruction to sustain the will as asked by appellant. (Broaddus' Heirs v. Broaddus' Devisees, 10 Bush, 309; Williams v. Williams, &c., 90 Ky., 33.)

4. If the testator was of sound mind at the time of making his will, it matters not what may have been his condition before or afterwards in the absence of any testimony that he was affected by any permanent or progressive infirmity of mind. (Weir's will, 9 Dana, 443-4-5; Bush v. Lisle, 89, Ky., 395.)

5. The fact that the crowd applauded the efforts of one of the counsel for appellee while addressing the jury is ground for setting aside the verdict.

KNOTT & EDELEN OF COUNSEL ON SAME SIDE, AND ON PETITION FOR REHEARING.

The fact being, as stated by the court, that the "preponderance of the proof for the paper was manifest," the verdict of the jury should have been set aside on that ground.

The idea of the court that the verdict should not be set aside as the finding was not so palpably against the evidence as to indicate "passion or prejudice," is erroneous, as that has reference alone to the finding of damages by a jury. (Civil Code, subsecs. 4 and 6, sec. 340; Price v. Cockran, 1 Bibb, 570; Mahan v. Jane, 2 Bibb, 32; Maxwell v. McIlvoy, 2 Bibb, 211; Weisiger v. Graham, 3 Bibb, 313; Steele's Heirs v. Jas. Logan, 3 Mar., 394; Weisiger v. Samuel, Lit. Sel. Cas., 185; Reid v. Langford, 3 J. J. M., 420; Newson v. Lycan, 3 J. J. M., 440; Singleton's Will Case, 8 Dana, 315; Banfield v. Bruton, 7 B. M., 308; Bright v. Wilson's Adm'r, 7 B. M., 122; Page v. Carter, 8 B. M., 192; King's Ex'r v. Hanna, 9 B. M., 369; Moore v. Foster, 10 B. M., 255; Quisenberry Will Case, 14 B. M., 386; Broaddus' Heirs v. Broaddus' Devisees, 10 Bush, 299; L. & N. R. Co. v. Graves' Assignee, 79 Ky., 74; Thomson v. Thomson, 93 Ky., 435 )

JOHN YOUNG BROWN, S. B. & R. D. VANCE AND JAS. F. CLAY FOR APPELLEE.

1. A non-expert, having an acquaintance with testator, may give his opinion as to the sanity or insanity of testator without stating the

Newcomb's Ex'or v. Newcomb.

facts supporting the opinion. (Brown v. Commonwealth, 14 Bush, 398; Hardy v. Merrill, 56 N. H., 232; Banbien v. Cicotte, 12 Mich., 459; Wise, &c., v. Foote, 4 Ky. Law Rep., 634; Carlin v. Baird, 11 Ky. Law Rep., 932.)

2. The instruction as to the testator's capacity to dispose of his estate "in a rational manner" has been repeatedly approved by this court, and an instruction explanatory of it was properly refused. (Tudor v. Tudor, 17 B. M., 391; Schropshire v. Reno, 5. J. J. M., 91; Best v. Best's Ex'rs, 11 Ky. Law Rep., 215; Phillips' Ex'rs v. Phillips' Adm'r, 5 Ky. Law Rep., 272.)

3. The testimony was sufficient to authorize the submission of the case to the jury. (Carlin v. Baird, 11 Ky. Law Rep., 932,)

4. The verdict can not be set aside on the ground that counsel for appellee, in his argument to the jury, was applauded by the crowd, as appellant raised no objection at the time.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The finding of the jury in the court below to the effect that a paper, purporting to be the will of E. B. Newcomb, deceased, was not his will, is sought to be set aside on this appeal by his widow and sole devisee, on the following grounds: First. That the opinions of non-experts against the sanity of the alleged testator were taken without a statement of facts upon which the opinions were based.

It is conceded that the witnesses thus permitted to express their opinions of the incompetency of Newcomb to make the will in contest, had opportunities, more or less ample, to form opinions of his mental condition through long acquaintance and association with him. But on the authority of the McDaniel Will Case, 2 J. J. M., 331, and of the case of Hunt's Heirs v. Hunt, &c., 3 B. M., 577, it is insisted that the correct rule and true doctrine is that "the opinions of witnesses, other than the subscribing witnesses, as to the competency of a testator, without stating facts on which they are predicated, are not evidence."

We put the contention of counsel in the very language of the Hunt case, and yet it is evident that just what facts must be stated to entitle the witness to give his opinion is left undetermined by the court. Unquestionably the opinion of a non-expert, who has had no opportunity to form an opinion of the sanity or insanity of a testator from acquaintance, association, observation, or the like, should not be taken. We think the true rule, after a thorough research, was reached in Brown v. Commonwealth, 14 Bush, 398 (Hines, Judge), where it was held that, before admitting the opinion of a non-professional witness as to the sanity or insanity of the person of whom he is to speak, the court must be satisfied that the witness has had an opportunity, by association and observation, to form such an opinion, and when such opportunity is shown, the opinion is competent and its admissibilty is not dependent on whether or not the witness is able to detail certain specific facts of themselves showing sanity or insanity. The ability of the witness to detail such facts may add very greatly to the weight of the opinion given, but they will not of necessity affect the question of the admissibility of the testimony.

What is sought is the precise mental condition of the subject, and when we come to compare the merit of the evidence given by the expert, which is admitted to be competent, who testifies upon a given hypothesis, often confusing and misleading, with the evidence of the neighbor and associate, who speaks from actual observation, however unsubstantial and indefinite his facts may appear, we are not prepared to give preference to the former; certainly not to the

exclusion of the latter. (See also Wise v. Foote, 81 Ky., 10; Carlin v. Baird, 11 Ky. L. R., 932.)

Second. That this instruction was misleading to the jury, viz: "If, at the time said Newcomb executed said paper, he had the capacity to know his wife and children and his estate, and to dispose of the same in a rational manner, according to a fixed purpose on his part, then he was of sound mind according to law, and they will find said paper to be his will."

It is argued, and not without some force, that when told that the capacity of the testator must be such as would enable him to dispose of his estate in a rational manner, the jury might conclude that if, according to their opinions, the disposition was not made "in a rational manner," then they might find against the paper. When we remember, however, that on all sides it is admitted that the provisions of a will, when reasonable, provident and natural, are in themselves high evidences of testamentary capacity, and may be submitted to the jury for the purpose of sustaining the paper, we are forced to conclude that provisions of a contrary character may be relied on to show want of capacity.

Irrational, unreasonable and unnatural provisions in a will may be shown as elements of testamentary incapacity and mental imbecility. And this is all, on a critical analysis, that is suggested by the objectionable words in the instruction. The manner of the disposition was not to be regarded as rational according to the opinion of the jury, but the disposition was to be in a rational manner, according to the fixed purpose of the testator.

It is not contended that the instruction submits to the jury what is or is not, in their opinion, a rational disposition of the estate, but the sole question submitted is, as to the capacity of the testator to make such a disposition.

But the discussion of the question need not be prolonged. It is not an open one in this State. In Tudor v. Tudor, 17 B. M., 391, the court said of a similar instruction :

"We do not perceive any valid objection to the instruction on this subject, which was given by the court to the jury. It requires the testator to have sufficient capacity to know in what his estate consists, and to dispose of it in a rational manner according to a fixed purpose of his own. If he had sufficient capacity to know his estate, the presumption would be that he did know it, and if he did not know it, proof of that fact would tend strongly to evince his want of capacity to know it, unless his ignorance on the subject was satisfactorily accounted for. And if he had sufficient capacity to dispose of his estate in a rational manner, he must necessarily have had capacity enough to not only to know his children, but also to understand his obligations to them as a parent. We do not, therefore, consider any of the objections which have been made to this instruction as entitled to any weight." See also to the same effect the case of Best v. Best's Ex'r, 11 Ky. L. R., 215.

It is urged that this instruction has only been offered when the contestants have objected to it, and they were not in an attitude to object to the

test of capacity required by it, because of its being greater than the law authorized. This is not true, however, of the case of Phillips' Ex'r v. Phillips' Adm'r, 81 Ky., 328. There the administrator, representing the will of 1869, was the appellant, and had the right to complain of any test greater than the true one. The court approved this instruction:

"That soundness of mind in making a will is capacity to know by the testator his legal heirs and his estate, and to dispose of same in a rational manner, according to a fixed purpose of his own," and said that it had been so long and so repeatedly indorsed by this court that it would not be disturbed, although it was possible to get an instruction with more technical accuracy. "It was not calculated," said the court, "to mislead the jury, and that is reason enough for allowing it to remain as it is." Many later cases in the same line might be cited.

Third. That the court should have sustained a peremptory instruction to the jury to find for the will. Without citing the evidence in detail, we are of the opinion, after a careful examination of it, that there was abundant testimony in behalf of the contestants to require its submission to the jury. Prather testified that he had known the testator for many years. In the last years of his life his mind had been failing; he was childish; there was a considerable change in his mind, and he hardly thought him capable of transacting ordinary business properly, or competent to make a will. Sugg had known him long, and thought him incompetent. He employed a quack

doctor—a humbug—and that was reason enough, he thought, to show incompetency.  E. Henry testified to his incompetency, and detailed circumstances showing loss of memory and lack of former business capacity. Dr. Dixon thought his mind likely affected by a sun-stroke, and never thought him very sound mentally after that, though he couldn't say he was incompetent to make a will.  Dr. Kitchell noticed a failure of mind and body in 1887 and 1888 (the will was made in 1890), and he would bid recklessly on tobacco.  At these times witness did not think him competent to make a will, or competent in 1890.

Robards had known him many years; saw a decided change in his mental condition in the fall of 1889, and detailed circumstances indicating childishness and loss of memory.  Didn't think him competent when he saw him last in 1889.  B. Hill, R. C. Soaper, M. E. Mitcherson and Wm. Elliott, each testified substantially as the others named, and with more or less detail.  Other evidence of a corroborative character was introduced by the contestants, showing feebleness of mind and body.  We think the court properly submitted it to the jury.  The testimony for the will was also by those who had known the testator long and well, and made out a strong case for the propounder, the preponderance of the proof for the paper being manifest.  But we can not say that the finding was so palpably against the weight of the evidence as to indicate passion or prejudice.

Nor do we think that because the crowd applauded the efforts of one of the distinguished counsel for the appellee when addressing the jury, the substan-

128          KENTUCKY REPORTS.      [VOL. 96,

tial rights of the appellant were affected. The court promptly suppressed it and counsel asked them to desist. No motion was then made to discharge the jury or objection in any form taken to the incident.

On the whole case we think the issue submitted was fairly tried out, and the judgment is, therefore, affirmed.